UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIAN
SOUTHERN DIVISION

AL LEIBOVIC,

    Plaintiff,

v.                                              Case No: 15-12639
                                                Honorable Victoria A. Roberts

UNITED SHORE MORTGAGE, LLC,
AND XEROX MORTGAGE SERVICES, INC.,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENANT XEROX MORTGAGE SERVICES, INC'S MOTION TO DISMISS

**I.    NATURE OF ACTION**

Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint.

This action arises out of the alleged theft of Al Leibovic's ("Leibovic") electronically stored personal identifiable information. Leibovic brings a multiple count class action suit against United Shore Financial Services, LLC ("United Shore") and Xerox Mortgage Services, Inc. ("XMS").

In response, United Shore and XMS filed Motions to Dismiss Leibovic's Complaint pursuant to Fed R. Civ. P. 12(b)(6). The Court ruled on United Shore's Motion, granting the Motion to Dismiss Count III – Bailment, and denying the Motion to Dismiss Counts I – Breach of Implied Contract, II – Unjust Enrichment, and IV – Negligence. Without prejudice, the Court denied United Shore's request to strike class action allegations.

1

XMS brings this Motion separate from United Shore pursuant to Fed R. Civ. P. 12(b)(6). It is **GRANTED** in part and **DENIED** in part.

### A. Statement of Facts

Leibovic applied for and obtained a mortgage through United Shore. United Shore is a financial services company that provides mortgage lending, servicing, and other related products. As part of United Shore's mortgage application process, prospective borrowers are required to provide personally identifiable information ("PII") and pay a loan application processing fee to United Shore. At the time of Leibovic's application, United Shore utilized BlitzDocs, a computer software program, to process and store loan documents. BlitzDocs is owned by XMS.

Leibovic alleges a Mexico-based criminal enterprise gained unauthorized access to United Shore's files. As a result, his and other United Shore customers' PII were compromised. According to Leibovic, this breach occurred at least twice; December, 2012 and August, 2013. Leibovic alleges the criminal enterprise hacked directly into the BlitzDocs system in order to gain access to customers' PII. After obtaining the information Leibovic says the criminal enterprise used the information to acquire or attempt to acquire fraudulent credit cards, issue fraudulent checks, and liquidate brokerage accounts.

Leibovic filed this complaint after several of his accounts were accessed and an attempt was made to liquidate his account with an investment company. Leibovic claims criminals attempted to open credit cards in his name and issued fraudulent checks from his bank account. He asks for attorneys' fees, and actual and punitive damages.

XMS filed a 12(b)(6) motion to dismiss. XMS alleges all claims fail against it because: (1) Leibovic cannot establish himself as a third-party beneficiary under the breach of contract claim; (2) Leibovic cannot show that XMS owed him a duty separate and distinct from the contractual obligation under the negligence claims; (3) Leibovic fails to allege that he provided information with an understanding that the information would be returned or otherwise accounted for, as required by a bailment claim; and (4) Leibovic's unjust enrichment claim does not allege that a benefit is conferred directly upon XMS.

## II. APPLICABLE LAW

### A. Motion to Dismiss (12(b)(6))

Fed. R. Civ. P. 12(b)(6) allows dismissal when a plaintiff fails to state a claim upon which relief can be granted. The motion tests the legal sufficiency of claims alleged in the complaint. Accordingly, "to survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When presented with a Rule 12(b)(6) motion, the court looks to the factual content of the complaint to determine whether the plaintiff has raised a "plausible inference of wrongdoing." *Southfield Ltd. v. Flagstar Bank*, 727 F.3d 502, 504 (6th Cir., 2013). The court must accept all allegations in the complaint as true and view them in

the light most favorable to the plaintiff in order to determine whether a plaintiff "is entitled to offer evidence to support the claims." *Twombly*, 550 U.S. at 563 n. 8. When presented with a 12(b)(6) motion, the court may consider the complaint and any attached exhibits, so long as they are referred to in the complaint and are central to the claims. See *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

### B. Choice of Law

#### i. Breach of Contract

Leibovic claims standing as a third party beneficiary to the services contract ("the Agreement") between United Shore and XMS. XMS argues New York law should be applied to Leibovic's breach of contract claim. Leibovic does not disagree. Nonetheless, the Court must satisfy itself that the correct law is applied.

Both parties cite to a Sixth Circuit decision, *Davidson*, which held that plaintiff's claim as a third party should be decided under the law of the state specified in the contract as the choice of law. *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1356 n. 15 (6th Cir. 1991). Because the Agreement has an explicit choice of law provision that relates to the claim and application of New York law is not adverse to Michigan's public policy, Leibovic's status as a third party beneficiary will be analyzed under New York law.

#### ii. Negligence and Unjust Enrichment

XMS and Leibovic agree Michigan law should apply to Leibovic's negligence and unjust enrichment claims. Michigan law applies to tort claims, unless there is a "rational reason" to apply the law of another state. *Sutherland v. Kennington Truck Serv.*, 454 Mich. 274, 286 (Mich. 1997). The court analyzes this by determining first if another state

4

has an interest in having its law applied. *Id.* If so, the court must then determine whether the presumption that Michigan law will apply can be overcome. *Id.*

Leibovic is not a resident of New York and these claims did not arise in New York. The Court agrees New York does not have an interest in the application of its laws to the negligence claims.

### iii. Bailment

Leibovic argues the Court cannot correctly determine the law that applies to his bailment claim. Leibovic relies on *Bennett* to assert the doctrine of *lex loci delicti* to urge the Court to wait to determine the applicable state law. *Lex loci delicti* requires the Court to apply the substantive law of the place where the harm occurred. *Bennett v. Enstrom Helicopter Corp.*, 679 F. 2d 630, 631 (6th Cir. 1982). However, the facts of this case are distinguishable. In *Bennett*, the court applied New Zealand law to a bailment claim because the issue giving rise to the claim occurred there; additionally, Michigan public policy did not support the application of state law, and the parties lacked contact with Michigan. *Id.* at 632. Here, Leibovic has already argued there is "no clearer place of contracting than Michigan," which flies in the face of his argument that the Court cannot determine what state law applies to the bailment claim. Thus, Leibovic's bailment claim will be evaluated under Michigan law, in conjunction with the negligence and unjust enrichment claims.

## III. DISCUSSION

### A. Breach of Contract

Leibovic claims breach of contract as a third party beneficiary to the Agreement. XMS has not disputed that a valid contract exists. However, XMS says Leibovic has not

stated a sufficient claim to show he has standing to sue as a third party beneficiary under the Agreement.

The Agreement provisions at issue are § 11.6 and § 7.2:

§ 7.2 Obligations: …. Additionally, XMS agrees to use commercially reasonable means to implement appropriate administrative, technical, and physical safeguards to meet the requirements of the Gramm-Leach-Bliley Act including reasonable efforts to (a) ensure the security and confidentiality of Customer Confidential Information; (b) protect against threats or hazard to the security or integrity of Customer Confidential Information; and (c) protect against unauthorized access to or use of Customer Confidential Information that could result in substantial harm or inconvenience to any customer of client. Dkt. No. 40, Exhibit A, § 7.2, Pg. ID 430.

§11.6: All rights and obligations of the parties hereunder are personal to them. Except as otherwise specifically stated herein, this Agreement is not intended to benefit, nor shall it be deemed to give rise to, any rights in any third party. Dkt. No. 40, Exhibit A, § 11.6, Pg. ID 433.

Under New York law, a plaintiff must show the following to establish a third party beneficiary claim: (1) the existence of a valid contract; (2) the contract was intended to benefit the third party; and (3) the benefit to the third party is "sufficiently immediate," indicating the contracting parties assumed a duty to compensate the third party if the

benefit is lost. See *Mandarin Trading Ltd. v. Wildenstein*, 919 N.Y.S.2d 465, 471 (N.Y. App. Div. 2011).

XMS relies on *LaSalle* to argue Leibovic cannot show the Agreement seeks to benefit him on the face of the contract. *LaSalle Nat'l Bank v. Ernst & Young LLP*, 729 N.Y.S.2d 671, 676 (N.Y. App. Div. 2012). In *LaSalle*, an insurer was able to prove the contract was not intended to benefit a third party from the language of the contract. Here, XMS asserts Leibovic failed to identify a contract provision that demonstrates a clear intent to benefit him; XMS says Leibovic merely depends on § 7.2 of the Agreement, which outlines requirements under the Gramm-Leach-Bliley Act. *See Strauss v. Belle Realty Co.*, 469 N.Y.S.2d 948, 950 (N.Y. App. Div. 1983). The Gramm-Leach-Bliley Act was enacted in 2011 to establish standards for financial institutions to protect customer records and information. 15 U.S.C. § 6801.

XMS also relies on *Nepco* to claim the Agreement explicitly disclaims benefits to third parties. *Nepco Forged Prods. Inc. v. Consolidated Edison*, 470 N.Y.S.2d 680, 681 (NY App. Div. 1984). In *Nepco*, the court found a landlord was barred from seeking benefits from a contract between a utility company and a subcontractor, because the contract stated, "Nothing in this Agreement, express or implied, is intended to confer on any other person any rights or remedies, in or by reason of this Agreement." *Id.* Thus, XMS claims § 11.6 of the Agreement bars Leibovic from bringing a claim based on the Agreement.

Leibovic says the language of § 11.6 of the Agreement does not bar his third party claim, but acknowledges the possibility of third party beneficiaries. In support of this argument, Leibovic relies on and distinguishes *Morse/Diesel, Inc. v. Trinity*

7

*Industries, Inc*, 859 F.2d 242, 246 (2nd Cir. 1988). In *Morse/Diesel* the contracting parties included a provision in their agreement which explicitly disclaimed any third parties and stated, "…no provision of this Agreement shall in any way inure to the benefit of any third person (including the public at large) so as to constitute any such person a third party beneficiary of this Agreement or any one or more of the terms hereof…" *Id.* Leibovic says § 7.2 references "customers of the client," and therefore, confers an intent to benefit Leibovic and putative class members, which is recognized by § 11.6.

The New York State appellate courts are divided, despite *Morse/Diesel*. Some courts found any benefit to a third party must be apparent from the face of the contract. *LaSalle Nat'l Bank v. Ernst & Young LLP*, 729 N.Y.S.2d 671, 676 (N.Y. App. Div. 2012). Others look to the surrounding circumstances, in addition to the contract, to determine the parties' intent. *Aievoli v. Farley*, 636 N.Y.S.2d 833, 833 (N.Y. App. Div. 1996); *See Lake Placid Club Attached Lodges v. Elizabethtown Bldrs.* 131 A.D.2d 159, 161 (N.Y. App. Div. 1987); *Logan-Baldwin v. L.S.M. Gen. Contrs. Ins.*, 94 A.D.3d 1466, 1470 (N.Y. App. Div. 2012).

The split in New York leaves Leibovic with a plausible claim that he and putative class members are third party beneficiaries. They have standing to sue on a breach of contract claim. Leibovic's claim survives XMS's motion.

### B. Negligence

XMS argues Leibovic's claim fails because he cannot establish XMS owed him a duty.

To sufficiently plead a claim for negligence, Leibovic must show: (1) Duty; (2) Breach of Duty; (3) Causation; and (4) Damages. *Fultz v. Union-Commerce, Assoc.*, 683 N.W.2d 587, 590 (Mich. 2004). When determining if a duty exists, courts must look to a number of variables including, "foreseeability of the harm, existence of a relationship between the parties involved, degree of certainty of injury, closeness of connection between the conduct and the injury, moral blame attached to the conduct, policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for the breach." *Krass v. Tri-County Sec., Inc.*, 593 N.W.2d 578, 582 (Mich. Ct. App. 1999).

XMS asserts that Leibovic must establish a duty "separate and distinct" from any contract obligations imposed by the Agreement because he is not a party to that contract. XMS relies principally on *Fultz*. *Fultz*, 683 N.W.2d at 592 The *Fultz* court found plaintiff could not establish a duty owed to her by a snow removal company based solely on a contract between the company and a non-party to the case. Further, XMS urges the Court to: (1) dismiss this claim because there is no current common law duty to protect electronically stored information, and (2) refrain from defining a new common law duty.

Leibovic says a duty was created when XMS accepted Leibovic's and other putative class members' PII. Leibovic asserts XMS had a duty to use reasonable care to safeguard and protect his and putative class members' PII. Leibovic says this duty was breached when XMS failed to adequately maintain PII and notify Leibovic of the data breach. This resulted in damages, including credit and banking fees, costs associated with identity protection, and theft of funds.

The Court ruled a dismissal of negligence claims against United Shore based on lack of common law duty was premature. While XMS argues Leibovic cannot establish a legal duty separate and distinct from his contract claim, it relies principally on a case that is distinguishable from the facts as hand. In *Fultz*, the plaintiff did not claim rights as a third party beneficiary. *Fultz*, 683 N.W.2d at 590. Leibovic does. The complaint sets forth a plausible claim for negligence.

**C. Negligent Performance of an Undertaking**

XMS says Leibovic's claim requires "physical harm" under the Restatement, but does not provide case law in support of this argument. The Court notes XMS also makes an argument to dismiss this claim based on lack of duty. However, as will be discussed below, duty is only one route for Leibovic to prevail on a claim of negligent performance of an undertaking.

A negligent performance of an undertaking claim is discussed in § 324A of the Restatement 2d of Torts, which Michigan courts adopted:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking. *Callesen v. Grand T.W.R. Co.*, 437 N.W.2d 372, 379 (Mich. Ct. App. 1989).

10

The Restatement sets forth three means to establish negligent performance of an undertaking. Leibovic argues all three in his complaint. First, he says XMS failed to exercise reasonable care in providing data storage and security services to protect Leibovic's and other putative class members' PII, which increased the risk that PII would be stolen. Second, Leibovic says United Shore owed him a duty to protect his information, and XMS assumed that duty. Third, Leibovic says he and putative class members have been harmed, because their PII has diminished in value, since they no longer have the ability to control the information.

As noted under the negligence discussion, XMS argues it did not owe Leibovic a duty. However, XMS does not address whether it failed to exercise reasonable care or whether Leibovic suffered harm as a result of relying on United Shore or XMS. Leibovic's claim survives XMS's motion.

### C. Bailment

Leibovic brings a claim against XMS for bailment.

XMS argues Leibovic did not expect his PII would be returned to him. This expectation is a necessary element of a bailment claim. The Court dismissed Leibovic's bailment claim against United Shore, because the Agreement was not one where he expected his information to be returned.

Bailment "imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished." *Universal Underwriters Ins. Co. v. Vallejo*, 446 N.W.2d 510, 513 (Mich. App. Ct. 1989) (Rev'd on other grounds). A plaintiff must show an agreement

11

between the parties that the personal property would be returned to him. *See In Re Target Corp. Data Breach Litig.*, 66 F. Supp. 3d 1154, 1177 (D. Minn. 2014).

XMS argues Leibovic has not laid a sufficient foundation to show that he and putative class members expected the PII would be returned or otherwise accounted for at the end of the bailment. XMS relies on the *Target* case, where the court found even if plaintiffs established their credit card information was personal property, they could not allege they expected the information back , or that Target wrongfully retained the information, when, in fact, the information was stolen. *Id.* Further, XMS argues Leibovic's complaint does not meet pleading standards established under *Twombly/Iqbal. Ashcroft*, 556 U.S. 662 at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Leibovic states in his response that he and putative class members "expected anyone charged with control of their data to adequately safeguard it." Dkt. No. 56, Pg. ID 873. Leibovic also references the Agreement as evidence that XMS would delete files after a certain amount of time. Dkt. No. 40, Exhibit A, Attachment A, ¶ C(4), Pg. ID. 435.

> Attachment A: Deployment, Hosting and Maintenance Agreement
>
> **Loan Deletion Folder**: Unless receiving written notification from Customer requesting XMS to extend the online storage term for specific loan folders, or the offloading of specific loan folders to portable storage media, XMS will erase/delete all loan folders within 30 days after the contracted online storage term described above, and provide written certification to customer.

Leibovic does not lay a sufficient factual foundation to show why he expected his information would be returned or accounted for by XMS. The facts alleged do not clearly indicate Leibovic was aware of XMS's involvement when he gave his PII to United Shore.  If Leibovic was not aware of XMS's involvement, he likely did not submit his PII with the expectation that XMS would return or account for the information. Further, Leibovic says his information was stolen by a criminal enterprise, not that his information was wrongfully retained, an issue highlighted by the *Target* court.  While Leibovic sought to remedy this claim in his second amended Complaint, the allegations do not support the conclusory statement that he expected the PII returned. The claim will be dismissed.

### D.     Unjust Enrichment

To sufficiently plead a claim for unjust enrichment, Leibovic must show: (1) the receipt of a benefit by XMS from him; and (2) an inequity resulting to him because of the retention of the benefit by XMS.  *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003).

XMS argues this claim fails because Leibovic did not allege direct contact with XMS. XMS relies on a case from this Court, *Munson*, to show direct contact between the parties is required to pursue a claim for unjust enrichment. *Munson v. Countrywide Home Loans, Inc.*, 2008 WL 5381866, 9 (E.D. Mich. 2008) (quoting *A&M Supply Co. v. Microsoft Corp.*, 2008 WL 540883 (Mich. Ct. App. 2008)).  This Court found in *Munson* that Defendants were able to prevail on a 12(b)(6) motion to dismiss, because the homeowner was unable to show he conferred a direct benefit on a loan company. *Id.* at 9.

Leibovic argues the case XMS relies on in *Munson* is dicta, and direct contact is not required to bring a claim. *In re Auto. Parts Antitrust Litig.*, 2014 US Dist. LEXIS 90724, 160 (E.D. Mich. 2014). However, *In re Auto Parts* is not controlling, nor does there appear to be a Sixth Circuit decision that finds direct contact is not required.

The Court is mindful of the split in the Eastern District. This Court's reading of Michigan law is that direct contact is required to maintain a claim for unjust enrichment. This claim will be dismissed.

### E. Punitive Damages and Attorneys' Fees

Leibovic claims attorneys' fees as a third party beneficiary to the Agreement, which allows attorneys' fees to the prevailing party. The threshold question- whether Leibovic is a third party beneficiary- must be answered before the Court can consider dismissal of Leibovic's claim for attorneys' fees. This request is premature.

## IV. CONCLUSION

Defendant's motion is **GRANTED** in part and **DENIED** in part. The Court grants Defendant's Motion to Dismiss Count VII – Bailment and VIII – Unjust Enrichment. The Court denies Defendant's Motion to Dismiss Counts IV – Breach of Contract, V – Negligence, and VII – Negligent Performance of an Undertaking.

**IT IS ORDERED.**

    /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: 10/28/16

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 28, 2016.

s/Linda Vertriest
Deputy Clerk