# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Al Leibovic, on behalf of himself
and all others similarly situated,

**Redacted - Public Version**

Plaintiff,

Case No. 15-cv-12639

v.

Hon. Victoria A. Roberts

United Shore Financial Services, LLC,
and Xerox Mortgage Services, Inc.
            Defendants.

Mag. Mona K. Majzoub

_____

## DEFENDANT XEROX MORTGAGE SERVICES' MOTION TO COMPEL AGAINST DEFENDANT UNITED SHORE

Defendant Xerox Mortgage Services, Inc. ("XMS"), through its attorneys, Miller, Canfield, Paddock and Stone, PLC, moves under Federal Rules of Civil Procedure 33, 34, and 37 for an order compelling Defendant United Shore Financial Services, LLC ("Shore") to produce information and documents responsive to XMS's First Set of Interrogatories and First Set of Requests for Production of Documents.   In support of this Motion, XMS relies upon the accompanying Brief in Support and the exhibits thereto.

Pursuant to Local Rule 7.1(a), there was a conference on May 30, 2017 between attorneys for XMS and Shore in which counsel for XMS explained the nature of this Motion and its legal basis.   XMS requested but did not obtain concurrence in the relief sought.

XMS respectfully requests that the Court: (1) grant its Motion to Compel, (2) order Shore to produce documents responsive to XMS's requests for production within seven days, (3) order Shore to respond to XMS's interrogatories within seven days, (4) declare that Shore waived any objections to XMS's requests for production by failing to state whether responsive materials are being withheld on the basis of any objection, (5) order Shore to pay XMS's costs and attorneys' fees associated with this Motion, and (6) grant such further relief as the Court deems just and appropriate.

1

Respectfully submitted,

By:  /s/  Michael P. Coakley
     MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
     Michael P. Coakley (P34578)
     Colin M. Battersby (P71283)
     Conor T. Fitzpatrick (P78981)
     150 West Jefferson, Suite 2500
     Detroit, MI  48226
     (313) 963-6420
     Email:  Coakley@millercanfield.com
     Email:  Battersby@millercanfield.com
     Email:  Fitzpatrick@millercanfield.com

     *Attorneys for Defendant Xerox Mortgage Services, Inc.*

Dated:  August 1, 2017

2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Al Leibovic, on behalf of himself
and all others similarly situated,

               Plaintiff,               Case No. 15-cv-12639

v.                              Hon. Victoria A. Roberts

United Shore Financial Services, LLC,     Mag. Mona K. Majzoub
and Xerox Mortgage Services, Inc.

               Defendants.
_____

**BRIEF SUPPORTING XEROX MORTGAGE SERVICES' MOTION TO
COMPEL AGAINST UNITED SHORE**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

INDEX OF AUTHORITIES.................................................................iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES..........................v

STATEMENT OF ISSUES PRESENTED..............................................vi

BACKGROUND ...........................................................................1

ARGUMENT ..............................................................................2

I.     SHORE REFUSES TO PRODUCE RELEVANT INFORMATION RESPONSIVE TO XMS'S DISCOVERY REQUESTS ...........................2

        a.    Shore's Unilateral Time Limitation ...................................4

        b.    "Initial Intrusion" .....................................................5

        c.    Shore's Security Practices.................................................7

        d.    Navigant ..............................................................9

        e.    Shore's Third Affirmative Defense....................................10

        f.    Individuals Interviewed by Internal Investigators or Law Enforcement .......................................................11

        g.    Individuals at Shore who did not have their BlitzDocs Accounts Terminated after Leaving.................................12

        h.    Communications between Shore's Counsel and Plaintiff's Counsel ...........................................................13

II.    SHORE WAIVED ANY OBJECTIONS TO XMS'S DOCUMENT REQUESTS BY FAILING TO STATE WHETHER RESPONSIVE MATERIALS ARE BEING WITHHELD.................................13

III.    SHORE SHOULD BE REQUIRED TO PAY XMS'S
        REASONABLE EXPENSES INCURRED IN MAKING THIS
        MOTION ................................................................................................. 14

CONCLUSION ...................................................................................................... 15

# INDEX OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Dixon v. Experian Information Solutions, Inc.*,
 2014 WL 2881589 (N.D. Ind. June 25, 2014) ..................................................8, 9

*Hennigan v. General Elec. Co.*,
 2010 WL 4189033 (E.D. Mich. Aug. 3, 2010) ............................................3, 4, 5

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
 293 F.3d 289 (6th Cir. 2002) ................................................................................10

*In re Steinhardt Partners, L.P.*,
 9 F.3d 230 (2d Cir. 1993) .....................................................................................10

*Keathley v. Grange Ins. Co. of Michigan*,
 2017 WL 227952 (E.D. Mich. Jan. 19, 2017) .......................................................3

*Leeper v. A.J. Lines, Inc.*,
 2016 WL 6610833 (N.D. Ind. Nov. 9, 2016).......................................................14

*Lewis v. ACB Bus. Servs.*,
 135 F.3d 389 (6th Cir. 1998) .................................................................................3

*Peterson v. Outback Steakhouse, Inc.*,
 2017 WL 343730 (E.D. Mich. Jan. 24, 2017) .....................................................14

*Scooter Store, Inc. v. Spinlife.com, LLC*,
 2011 WL 2160462 (S.D. Ohio June 1, 2011) ........................................................8

*Strategic Marketing and Research Team, Inc. v. Auto Data Solutions, Inc.*,
 2017 WL 1196361 (E.D. Mich. Mar. 31, 2017).....................................................8

**Federal Rules**

Federal Rule of Civil Procedure 26 .......................................................... 2, 7, 8, 11

Federal Rule of Civil Procedure 34 .................................................................3, 13

iii

Federal Rule of Civil Procedure 37 ....................................................................3, 14

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Federal Rule of Civil Procedure 26(b)(1)

Federal Rule of Civil Procedure 26(d)(3)(B)

Federal Rule of Civil Procedure 33

Federal Rule of Civil Procedure 34

Federal Rule of Civil Procedure 37

## <u>STATEMENT OF ISSUES PRESENTED</u>

Should Shore be ordered to make a full production of documents in response to XMS's First Set of Requests for Production of Documents within seven days?

      Defendant XMS answers:       Yes

      Defendant Shore answers:      No

Should Shore be ordered to fully respond to XMS's First Set of Interrogatories within seven days?

      Defendant XMS answers:       Yes

      Defendant Shore answers:      No

Were Shore's objections, if any, to XMS's First Set of Requests for Production of Documents waived due to Shore's failure to state whether any responsive materials are being withheld on the basis of objections?

      Defendant XMS answers:       Yes

      Defendant Shore answers:      No

## BACKGROUND

Defendant Xerox Mortgage Services, Inc. ("XMS") provided document management and storage services/software to Defendant United Shore Financial Services ("Shore") pursuant to a Services Agreement. ("Agreement"). The software is known as "BlitzDocs." Shore stored its confidential information using BlitzDocs which included mortgage applications such as that of Plaintiff.

The Agreement limits to within its four corners the representations on which XMS, Shore, or anyone claiming under it may rely. Plaintiff, a former customer of Shore, did not have a relationship with XMS. He gave his application to his mortgage broker, who in turn gave it to Shore, who in turn stored it in BlitzDocs.

Beginning sometime in 2011, criminal intruders stole Shore's confidential information from BlitzDocs. On July 27, 2015, Plaintiff, one of the individuals who allegedly had his confidential information stolen by those same criminal intruders, filed a Class Action Complaint against Shore. (Doc. #1.) On March 3, 2016, Plaintiff filed his First Amended Class Action Complaint, adding XMS as a defendant. (Doc. #29.) On May 27, 2016, XMS filed a Motion to Dismiss the claims against it. (Doc. #46.) While XMS's Motion was pending, discovery was stayed as to XMS but allowed to continue as between Plaintiff and Shore.

The Court granted in part and denied in part XMS's Motion to Dismiss on October 28, 2016. (Doc. #67.) XMS timely served its Initial Disclosures on

1

November 11, 2016 and on December 13, 2016, the Parties agreed to a discovery plan going forward.  (Rule 26(f) Plan, Doc. #70.)

On December 15, 2016, XMS served Shore XMS's First Set of Interrogatories (Ex. A) and First Set of Requests for the Production of Documents (Ex. B).  On April 21, 2017, Shore served its discovery responses.  (Ex. C, Shore's Responses to XMS's First Set of Interrogatories; Ex. D, Shore's Responses to XMS's First Set of Requests for the Production of Documents.)  In its Responses to XMS's Interrogatories, Shore made numerous "general objections" including a unilateral declaration that it would "only provide information from the period from October 1, 2012 to December 31, 2013."  (Ex. C at 3.)  Shore's Responses to XMS's document requests contained the same arbitrary limitation.  (Ex. D at 4.)

Because Shore refuses to produce documents and information pertaining to the time period when the criminals obtained Shore login credentials as well as refusing to respond to other relevant XMS discovery requests, this Motion is necessary.

## ARGUMENT

## I.   SHORE REFUSES TO PRODUCE RELEVANT INFORMATION RESPONSIVE TO XMS'S DISCOVERY REQUESTS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…"  Fed. R. Civ. P. 26(b)(1).  Indeed, "the scope of discovery under the

2

Federal Rules of Civil Procedure is traditionally quite broad" and the "parties may obtain discovery on any matter that is not privileged, is relevant to any party's claim or defense, and is proportional to the needs of the case." *Keathley v. Grange Ins. Co. of Michigan*, 2017 WL 227952, at *2 (E.D. Mich. Jan. 19, 2017) (Majzoub, M.J.) (citing *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998)). (Ex. M.) When the information sought "appears relevant," "the party resisting discovery bears the burden of establishing lack of relevance." *Hennigan v. General Elec. Co.*, 2010 WL 4189033, at *3 (E.D. Mich. Aug. 3, 2010). (Ex. N.)

Moreover, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if … a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B), (B)(iv). "If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

Shore's responses remain deficient in the following respects:

### a. Shore's Unilateral Time Limitation

As noted above, beginning sometime in 2011, criminals came into possession of a Shore broker's username and password.  John Baden, one of the criminal hackers, revealed that the conspiracy to steal Shore's confidential information started at least as early as February 2011 when co-conspirator Alex Fernandez provided other co-conspirators with Shore's website, a Shore broker's user ID, and the Shore broker's password.  *United States of America v. John Gordon Baden*, (S.D. Cal. Case No. 14-cr-0277; Government's Sentencing Memorandum; #106 at pp. 5-6.)  According to Mr. Baden's Open Plea, "[Baden], along with FERNANDEZ and BAILEY, obtained and shared log-in credentials that enabled them to gain unauthorized access to [Shore's] electronic customer records and the BlitzDocs computer application that [Shore] used to manage those records.  For example, on July 6, 2011, [Baden] asked FERNANDEZ for the login and password of a Florida [Shore] mortgage broker so that he could access [Shore's] customers' names and social security numbers and use their PII to order credit cards.  … FERNANDEZ responded with the [Shore] broker's log-in credentials." (*Id.*, at Doc. #63, Page ID #81-82.)

XMS pointed this out to Shore in a Letter on April 27, 2017.  (Ex. E, 4/27/17 Letter from M. Coakley to B. Doran.)  But despite XMS *quoting* to Shore the portions of Baden's open plea where he admits having a Shore username and

password in 2011, Shore said it "d[id] not support any suggestion that United Shore's systems were hacked or that any facts prior to December 2012 are relevant to this lawsuit."  (Ex. F, May 19, 2017 Letter from B. Doran to M. Coakley.)

Respectfully, the plea speaks for itself.  The criminals apparently had access to Shore's BlitzDocs database in 2011 at the latest, well before any alleged wrongdoing by XMS.  XMS is entitled to know the facts and circumstances behind all intrusions, including but not limited to the name, location, username, and password of the Shore mortgage broker whose credentials the criminals obtained.

### b.  "Initial Intrusion"

Shore objects to XMS Interrogatory No. 16 and XMS Request for Production No. 23 asking for information and documents about the "initial intrusion" FBI Investigator Christopherson wrote to Shore about in an email on July 18, 2014.  Shore says that it is "unaware as to what Mr. Christopherson was referring by his reference to 'initial intrusion.'"  The record belies this assertion. In the email where Mr. Christopherson references the "initial intrusion," Mr. Christopherson offers to ███████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████"  (Ex. G, USFS003566).  Three days later, Shore took up Mr. Christopherson's offer to discuss the "initial intrusion" and the ████████████

████████████████████████ Mr. Christopherson then sent a follow-up

email to Shore, ██████████████████████" and he lists the ██

████████████████████████. (Ex. H, USFS003567).

Thus, it is simply not credible that Shore is "incapable of ascertain[ing]" what Mr.

Christopherson meant by "initial intrusion."

It is apparent that Mr. Christopherson revealed to Shore the ████████

████████████████████████. Mr. Christopherson's

reference to ████████████████" does not make sense unless there was

at ████████████████████████████

██ Shore. For example, on September 5, 2013, Mr. Christopherson wrote to Shore,

███████████████████ ███████████████████████

████████████████████████████

████████████████████████" (Ex. I, USFS003451.) It is

clear from this that Shore knew about at ████████████████

████████████████████████████

████████████████████. XMS is entitled to know the Shore

BlitzDocs ████████████ Shore was told ████████████████

████████████████████.

---

[1] ████████████████████████.

6

### c.  Shore's Security Practices

Plaintiff's original Complaint alleged that "United Shore … did not have adequate computer systems and security practices to secure customers', potential customers', and former customers' PII." (Doc. #1, Page ID #15.)  Shore denied the allegation.  (Doc. #26, Page ID #233.)  Accordingly, XMS Interrogatory No. 4 asked for the factual basis behind that denial.  Shore refused to provide a substantive response, arguing:

> the incidents alleged in the Second Amended Complaint did not involve United Shore's system or servers, but rather occurred by and through the unauthorized access to XMS's BlitzDocs system on XMS's servers where United Shore's data was stored and maintained.

(Ex. C at 5.)  At bottom, Shore's position is that because Shore does not believe it is at fault, Shore should not have to respond to discovery requests.  That is not how discovery works.

Federal Rule of Civil Procedure 26(b)(1) provides that, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…"  Shore's defense to Plaintiff's allegations is that Shore's systems are safe and it is XMS's systems that were faulty.  XMS is entitled to discover information about Shore's systems in the same sense that Shore is entitled to discover information about XMS's systems, which Shore did and XMS did not contest.

7

Whether XMS is entitled to discovery on a Shore defense does not depend on whether Shore agrees with the factual basis of the allegations in the complaint. If it did, "it is doubtful any defendant would ever make a production of documents." *Strategic Marketing and Research Team, Inc. v. Auto Data Solutions, Inc.*, 2017 WL 1196361, at *3-4 (E.D. Mich. Mar. 31, 2017).  (Ex. O.)

Instead, the pertinent question is whether the discovery is *relevant* to the parties' claims or defenses.  "The factual basis of [Plaintiff's] claims is properly addressed at summary judgment, and 'has no bearing on whether the discovery Plaintiff[] seeks is relevant, particularly viewed in light of a party's broad rights to discovery under Rule 26.'"  *Id.* at *4 (quoting *Scooter Store, Inc. v. Spinlife.com, LLC*, 2011 WL 2160462, at *2 (S.D. Ohio June 1, 2011) (Ex. P)). *see also Dixon v. Experian Information Solutions, Inc.*, 2014 WL 2881589, at *5 (N.D. Ind. June 25, 2014) ("Experian argues the merits of the … claim in an attempt to prevent discovery relevant to the claim.  As asserted by Dixon, the … claim has not yet been dismissed from this case.  Regardless of the ruling that is ultimately rendered on the merits, Dixon is entitled to discovery relevant to his pending claims.")  (Ex. Q.)

Shore cannot evade its discovery obligations by contesting the merits of Plaintiff's claims or XMS's defenses. Indeed, it is *Shore's defense* that it was XMS's systems, not Shore's, that were deficient.   (Doc. #26, Page ID #233.)  The

8

information from the criminals who stole Plaintiff's information is that a Shore username and password enabling access to Shore's confidential information was in their hands as early as February 2011.  The fact that Shore contests whether the security of its systems was deficient does not relieve Shore from complying with its discovery obligations.  Shore should be compelled to produce documents about the security of its systems, including but not limited to password security.

### d. Navigant

In the aftermath of the alleged intrusion(s), Shore commissioned a third-party, Navigant, to conduct an investigation.  When Shore made its production of documents, the vast majority documents related to that investigation were withheld as attorney-client privileged on the ground that the investigation was commissioned by counsel.  (See Ex. J, Shore's privilege log.)  Indeed, of the 472 total emails Shore withheld as privileged, 302 of them were to or from Navigant. *Id.*  However, in Shore's Response to XMS Interrogatory No. 8, Shore uses the alleged results of that investigation offensively to allege fault on the part of XMS. (Ex. C at 9-10.)

Shore is engaging in impermissible selective waiver.  Shore cannot waive privilege over the results of the investigation and at the same time prevent XMS from discovering information about how the investigation was conducted and what materials were considered.  The Sixth Circuit has explicitly "reject[ed] the concept

of selective waiver, in any of its various forms." *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 302 (6th Cir. 2002).

The Sixth circuit rejected selective waiver on the ground that it "transforms the attorney-client privilege into 'merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage.'" *Id.* (quoting *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993)).  Indeed, that is how Shore is using it here.  Shore is seeking the benefit of using the results of an alleged investigation but seeking to withhold as privileged the information about what the investigation considered and how it was conducted.

By relying on and using offensively the alleged results of the Navigant investigation, Shore waived privileges that might apply to materials and information related to that investigation.  Shore should be compelled to produce information and documents about Navigant's investigation.

### e.  Shore's Third Affirmative Defense

XMS Interrogatory No. 5 asks for the factual basis of Shore's Third Affirmative Defense that Plaintiff's claims are barred "in whole or in part, as based on the acts, or failure to act" of XMS.  (Ex. A at 4.)  Shore answers by referencing its responses to XMS Interrogatories 8 and 10.  Neither of Shore's responses to those respective interrogatories explain what XMS "acts" or "failure[s] to act" Shore believes may bar Plaintiff's claim(s).  (Ex. C at 8-11.).  Shore should be

10

compelled to provide a full response.  If Shore's defense is that XMS did, or failed to do, something that caused Plaintiff's harm, XMS is entitled to know what it is that Shore believes XMS did and should not have done, or did not do but should have done.

### f.  Individuals Interviewed by Internal Investigators or Law Enforcement

XMS Interrogatory No. 11 asked Shore to identify those at Shore "who were interviewed by either law enforcement … or internal or external investigators (including, but not limited to, Navigant) about alleged breaches" resulting in the alleged criminal access to XMS's servers.  (Ex. A at 4.)  Shore's response was vague:

> United Shore and/or Navigant had communications of varying length, subject matter and scope with many United Shore employees, including but not limited to the United Shore employees identified in" Shore's Rule 26(a) disclosures.

(Ex. C at 11.)

When XMS inquired in a Letter as to whether Shore meant that *all* Shore employees in the disclosures had conversations with investigators and whether the "including, but not limited to" language meant there were others, Shore refused to answer, complaining that XMS's use of the word "conversations" in the Letter "substantially broaden[ed] Interrogatory No. 11."  (Ex. F at 2.)  On the May 30th meet and confer call, XMS relayed that "conversations" was merely being used as a synonym in order to clarify its Request, which after all is the whole purpose of

11

the meet and confer call and related correspondence. XMS certainly did not envision that term encompassing a wider universe of communications than requested.

Still, in the spirit of cooperation, XMS offered to narrow the Interrogatory to avoid confusion.  (Ex. K, 6/9 Letter from M. Coakley to B. Doran at 3-4.)  Shore has not responded to this offer.  "Interviewed" is plain English and Shore should be ordered to respond fully to Interrogatory No. 11.

### g.  Individuals at Shore who did not have their BlitzDocs Accounts Terminated after Leaving

XMS Interrogatory No. 15 originally asked Shore to "identify all former United Shore employees or agents whose email accounts remained on the system at any time during January 2012 to August 2013 after the employee or agent terminated his/her employment or agency.  (Ex. A at 5.)  Shore objected, principally on vagueness grounds.  (Ex. C at 13.)

XMS offered to clarify and narrow the Interrogatory as follows: "Identify all former United Shore employees, agents, or associates, during January 2012 to August 2013, whose Shore BlitzDocs account was not deactivated or disabled immediately upon termination from his/her employment, agency, or association with Shore."  (Ex. K at 4.)  Despite this narrowing and clarification, Shore still refuses to respond.

12

### h.  Communications between Shore's Counsel and Plaintiff's Counsel

XMS's Document Request No. 2 asked Shore for "all communications between you / your counsel and Plaintiff / Plaintiff's counsel related to XMS." (Ex. B at 3.)  Shore objected, saying responsive documents "may be" privileged and objected to the Request "to the extent it is directed to counsel, and on the basis of such objection United Shore will not produce such documents."  (Ex. D at 4.)

Shore's position that the request is objectionable because it was "directed to counsel" is wrong.[2]  XMS asked Shore, a party, for its counsel's communications with Plaintiff/Plaintiff's counsel, which as Shore's representative, are plainly within Shore's control.  *See* F.R.C.P. 34(a)(1) (party required to produce documents in their "possession, custody, or control").  Shore should be compelled to produce the requested documents.

## II.   SHORE WAIVED ANY OBJECTIONS TO XMS'S DOCUMENT REQUESTS BY FAILING TO STATE WHETHER RESPONSIVE MATERIALS ARE BEING WITHHELD

In violation of Rule 34, Shore failed to "state whether any responsive materials are being withheld on the basis of that objection."  (*See* Ex. D.) Therefore, Shore waived any objections it may have had as to the requests' scope.

---

[2] Shore's objection is curious given that Shore's document requests defined "XMS" as including XMS's "experts, representatives, *and attorneys*."  (Ex. L, Shore's First Set of Document Requests at 1) (emphasis added).

*See, e.g.*, *Leeper v. A.J. Lines, Inc.*, 2016 WL 6610833, at *13 (N.D. Ind. Nov. 9, 2016).  (Ex. R.)

## III.   SHORE SHOULD BE REQUIRED TO PAY XMS'S REASONABLE EXPENSES INCURRED IN MAKING THIS MOTION

XMS should not have to bear the cost of the motion practice required to force Shore to abide by its most basic responsibilities under Rules 33 and 34. Shore's outright refusal to produce information from the time period when criminals engaged in highly relevant activities necessitated this Motion.  The refusal has no basis in law or the Rules.

Therefore, if the Court grants the Motion to Compel, "the court must, after giving an opportunity to be heard, require [Shore] . . . to pay [XMS]'s reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).  *See, e.g.*, *Peterson v. Outback Steakhouse, Inc.*, 2017  WL 343730, at *1 (E.D. Mich. Jan. 24, 2017) ("If a court grants a Rule 37 motion to compel, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust.") (citing F.R.C.P. 37(A)(5)(a)) (Ex. S).

Shore should be required to pay the reasonable expenses XMS incurred in pursuing this Motion.

14

## <u>CONCLUSION</u>

Shore's position has no basis in and indeed is contrary to law and the Federal Rules of Civil Procedure.  Shore should be ordered to respond in full to XMS's discovery requests within seven days and should be ordered to pay the costs XMS incurred in pursuing this Motion.

XMS respectfully requests that the Court grant its Motion to Compel.

Respectfully submitted,

By: /s/  Michael P. Coakley _____
    MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
    Michael P. Coakley (P34578)
    Colin M. Battersby (P71283)
    Conor T. Fitzpatrick (P78981)
    150 West Jefferson, Suite 2500
    Detroit, MI  48226
    (313) 963-6420
    Email:  Coakley@millercanfield.com
    Email:  Battersby@millercanfield.com
    Email:  Fitzpatrick@millercanfield.com

Dated:  August 1, 2017

15

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 1, 2017, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing upon all ECF filing participants.

/s/  Conor T. Fitzpatrick    

29603893.1\152778-00002